## NEFF v. PENNSYLVANIA R. CO.
### No. 9688.

United States Court of Appeals
Third Circuit.

Argued Jan. 17, 1949.

Decided March 2, 1949.

Joseph S. Clark, Jr., of Philadelphia, Pa. (Robert M. Landis, and Barnes, Dechert, Price, Smith & Clark, all of Philadelphia, Pa., on the brief), for appellant.

Elias Magil, of Philadelphia, Pa. (Richter, Lord & Farage, of Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and O'CONNELL, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from an order denying a new trial to the defendant in a Federal Employer's Liability Act, 45 U.S.C.A. § 51 et seq., case which had resulted in a judgment in favor of the plaintiff.

The accident which is the basis of the action happened about three A.M. June 22, 1945 at the Lewistown, Pennsylvania engine house of the appellant. Neff, about fifty-seven years old at the time, was employed as a laborer by the railroad. He was using a wrench to loosen a greasecup cap on the parallel rod of a locomotive. The wrench weighed three pounds and was two and one-half feet long. Neff placed the socket of the wrench over the greasecup cap, held it there with his left hand and pushed up its shank with his right hand. The cap did not move and he pushed up with his full force. The wrench socket slipped and pulled his body up with it. He said, "My weight seemed to pull me in two * * * Felt my back pulling apart and felt kind of a tear across my back." He indicated his lower left back. He remained quiet for about ten minutes and then went back to work. He worked Saturday morning on a different time shift. He had a pain in the back, and that morning the pain started to shoot down his left leg. That night he had pain in his back and leg. On Sunday, his wife reported him sick. On Sunday afternoon his foreman came to see him. The latter in turn sent a railroad doctor who had Neff taken tc

the Lewistown Hospital in an ambulance the same day. He was at the hospital for eleven days and returned there as an out-patient six times after his discharge. On November 21, 1945 he went to the Harris-burg Hospital for an examination. On April 11, 1946 Dr. Jepson, an orthopedist, examined him at the request of his attor-neys. About the same time, also at the attorneys' request, Dr. Farrell took X-rays of Neff's back and left knee. Dr. Jepson saw Neff again on September 4, 1946, August 1, 1947 and the day before the trial, November 11, 1947. Dr. Farrell took more X-rays on November 11th. Dr. Jepson prescribed a back brace which Neff was still wearing at trial time. Neff said that he had been well prior to the accident and that since the accident he had grown progressively worse. He now needs and uses a cane to get around. He has not done any work since the day following the accident.

■ Appellant's main point is that the defense motion to strike out the medical testimony offered on behalf of the plain-tiff should have been granted. The ground for that motion was that the medical testi-mony failed to establish any causal con-nection between the accident and the dis-ability complained of by plaintiff. Though the question of negligence has been resolved by the jury verdict, appellant urges that the facts of the accident are important in connection with the type of injuries alleged by the plaintiff.

Our independent study of the record satisfies us that there was sufficient medical evidence on behalf of the plaintiff to show such causal relationship. This, coupled with the plaintiff's own testimony, the medical evidence for the defense, the charge of the court, the interrogatories given by the court to the jury and the answers to those interrogatories by the jury, justifies the verdict below as far as this branch of the appeal is concerned.

Dr. Farrell was one of the two medical witnesses for the plaintiff. He said he found a narrowing of the second and fourth lumbar vertebrae as the result of crushed fractures and a destruction of the internal semi-lunar cartilage of the left knee. On direct examination he was asked: "Now *given the history* that Mr. Neff had been apparently, outwardly, in good health so far as you know, so far as his back was concerned, up to June 22, 1945, *when he met with an accident, when he pushed the two-and-a-half foot long wrench suddenly and violently upward, as was demonstrated before to Doctor Jepson in your presence,* and that thereafter the fractures, com-pression fractures of the second and fourth lumbar vertebrae appeared, have you an opinion as to whether the accident refer-red to had any cause or connection with those fractures?" (Emphasis supplied.)

■ The question was objected to as incomplete. It was expanded and then an-swered without further objection. Dr. Far-rell said he had an opinion and "would say that the accident was the cause of the [back] symptoms" but not of the fractures which he had found. He was then asked about the condition of the left knee and he said that in his opinion the cause of that was "The same accident". He based this on "the history of the case and the demonstration which Mr. Magil [plaintiff's attorney] gave * * *." On cross ex-amination he described the knee condi-tion as traumatic arthritis. He also found some osteoarthritis present in the X-ray films of Neff's back. Though a reading of the cross-examination of this witness might create some doubt of the soundness of his opinions, particularly with reference to the cause of the knee condition, those opinions were neither withdrawn or ac-tually self contradicted. The jury was therefore entitled to receive the testimony and its credibility was for that body to pass upon.

There was considerably more about ar-thritis put into evidence by the doctors who testified for the defense. Dr. Weaver said that it was probable that given the amount of osteoarthritis present in Neff's back, the occurrence of trauma would be much more likely to produce disability than if the osteoarthritis was not there. Dr. Mc-Clain said that the injury to Neff's back ag-gravated a preexisting arthritic condition. Dr. Weaver, an X-ray specialist, found acute arthritis in the left knee. Dr. Cas-sidy gave as his opinion that Neff's "trouble,

his complaint and his disability is due to an osteoarthritic condition of the spine and of the left knee." He agreed that "trauma has an effect in aggravating preexisting arthritis or preexisting osteoarthritis."

The court in affirming plaintiff's eighth point gave detailed instruction to the jury regarding aggravation of arthritis, saying: "8. If you find that before the accident Plaintiff had arthritic changes in him which did not disable him, and further find that the accident aggravated, brought to light, or accelerated or sped up the effects of these arthritic changes, if you return a verdict for Plaintiff, you will include all the effects of the accident in operating upon these arthritic conditions as well as any other injuries suffered in the accident by Plaintiff."

Answering the interrogatories given them by the court, the jury specifically found that the railroad was negligent in furnishing Neff with a defective wrench; that said negligence contributed in whole or part to permanently aggravating preexisting conditions of Neff's back and left knee and that as a result of his injury Neff has become totally disabled. Neff was absolved from contributory negligence.

In view of the above, plaintiff's other medical witness, Dr. Jepson, becomes unimportant. As to him it might be noted in passing that while he ostensibly did say that the accident merely "could" have caused the injuries which he claimed to have found, in reality, by eliminating any other accident and evidence of any other involvement, the witness went much further than simply stating that there was only a possibility that the accident caused the conditions he described.[1] It is also true that on cross-examination any value that could be attached to the direct testimony of the witness was pretty much destroyed. This need not be gone into at length because, as stated, without Dr. Jepson's evidence there was still sufficient legally unobjectionable medical testimony in the plaintiff's case to connect plaintiff's alleged conditions with his accident.

Appellant also presents a problem concerning interrogatories as a point in this appeal. The interrogatories were asked on behalf of the plaintiff and answered by the defendant after its objection to them had been overruled.

It does seem that with the answers to the interrogatories in the hands of appellee, the question is moot as far as this case is concerned. If the general situation involved is of sufficient importance, perhaps the procedure followed in the District Court in Hickman v. Taylor, D.C.E.D.Pa., 4 F.R.D. 479, might be considered as a practical method of bringing the matter properly before us.

The order of the District Court will be affirmed.

---

[1] His full answer on this reads: "If there has been no preceding accident and no preceding evidence of involvement of the 2nd and 4th lumbar vertebrae and no preceding accident or evidence of injury to that knee, such an act, in my opinion, could have caused the injuries described."